

**SIGNED this 30th day of September, 2011**

_Shelley D. Rucker_

Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

STEVEN McKENZIE                                    No. 08-16378
a/k/a Toby McKenzie                                Chapter 7

      Debtor;

GRANT, KONVALINKA & HARRISON, P.C.,

      Plaintiff,

v.                                                 Adversary Proceeding
                                                   No. 11-1110

F. SCOTT LEROY d/b/a LEROY &
BICKERSTAFF, F. SCOTT LEROY,
LEROY & BICKERSTAFF,PLLC,
LEROY, HURST & BICKERSTAFF,
PLLC and C. KENNETH STILL

      Defendants.

### MEMORANDUM

Defendants F. Scott Leroy d/b/a LeRoy & Bickerstaff, F. Scott LeRoy; LeRoy &

Bickerstaff, PLLC; LeRoy, Hurst & Bickerstaff, PLLC; and C. Kenneth Still, trustee (collectively

"Defendants") move this court to dismiss the complaint of Plaintiff Grant, Konvalinka &

Harrison, P.C. ("GKH" or "Plaintiff") in this adversary proceeding.  [Doc. Nos. 18, 21].[1]  Plaintiff

opposes the motions of the Defendants.  [Doc. No. 23].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the

applicable law and makes the following findings of fact and conclusions of law pursuant to Fed.

R. Bankr. P. 7052.

## I.    Background Facts

The court has summarized facts involving these same parties in several other

memoranda filed in both the main bankruptcy case and in a separate adversary proceeding

involving similar allegations.  *See e.g.* [Adv. Proc. 11-1016, Doc. No. 68; Bankr. Case No. 08-

16378, Doc. Nos. 1199, 1354, 1388].  However, for ease of reference, the court will

resummarize the background facts here.

### A.    Facts Relating to the Complaint

The record reveals that the Plaintiff filed its complaint ("Complaint") on July 22, 2011.

[Doc. No. 1].  The Complaint asserts that GKH is a law firm located in Chattanooga, Tennessee.

Defendant F. Scott LeRoy is an attorney.  He was formerly a general partner with the law firm of

LeRoy & Bickerstaff.  The Complaint asserts that Mr. LeRoy became a member of a

professional limited liability company known as LeRoy & Bickerstaff, PLLC around July 28,

2010, and that the company is now called LeRoy, Hurst & Bickerstaff, PLLC.  Defendant C.

Kenneth Still is the trustee ("Trustee") in the debtor ("Debtor") Steve McKenzie's main

bankruptcy case.  *See* Complaint, ¶¶ 1-3.

On November 20, 2008 a group of petitioning creditors filed an involuntary petition in

bankruptcy in this court against the Debtor.  *See* [Bankruptcy Case No. 08-16378, Doc. No. 1].

On December 20, 2008 the Debtor filed a Chapter 11 voluntary petition for bankruptcy,

---

[1] All citations to docket entries pertain to docket entries for Adversary Proceeding 11-
1110, unless otherwise noted.

Bankruptcy Case No. 08-16987.  On January 16, 2009 this court consolidated the two

bankruptcy cases. [Bankruptcy Case No. 08-16378, Doc. No. 33].

The court held a hearing on the U.S. Trustee's motion to appoint a trustee on February

19, 2009. [Bankr. Case No. 08-16378, Doc. Nos. 135, 101].  The U.S. Trustee filed a notice

appointing Mr. Still Chapter 11 trustee for the Debtor on February 19, 2009, and the court

issued an order granting the U.S. Trustee's motion to appoint a Chapter 11 Trustee on February

20, 2009.  [Bankruptcy Case No. 08-16378, Doc. Nos. 130, 140].  The court converted the case

to a Chapter 7 case on June 14, 2010, and Mr. Still continued as the Chapter 7 trustee.

[Bankruptcy Case No. 08-16378, Doc. No. 789].[2]

On April 3, 2009 the court granted the Trustee's application to employ F. Scott LeRoy as

his Chapter 11 counsel.  [Bankruptcy Case No. 08-16378, Doc. No. 238].  He was reappointed

as Chapter 7 counsel on March 8, 2011, nunc pro tunc to July 1, 2010.  [Bankruptcy Case No.

08-16738, Doc. No. 1069].[3]

On August 5, 2010 the Trustee filed an adversary proceeding against GKH seeking

turnover of documents alleged to be property of the estate pursuant to 11 U.S.C. § 542.  *See*

[Case No. 10-ap-1397, Doc. No. 1 ("Turnover Complaint")].  On November 5, 2010, this court

dismissed that adversary proceeding based on an agreed order of dismissal submitted by the

---

[2]  GKH asserts that there is no order appointing Mr. Still as the Chapter 7 trustee
following the Chapter 7 conversion. [Doc. No. 23, p. 2].  The court notes that the court does not
issue an order appointing a specific trustee; rather, the U.S. Trustee appoints the Chapter 7
trustee.  *See* 11 U.S.C. § 701(a)(1).  The docket in the Debtor's main bankruptcy case indicates
that an amended notice of the 341(a) meeting of creditors was filed indicating that Mr. Still was
continuing as the Trustee in the case, rather than the Trustee automatically assigned by the
U.S. Trustee's office.  *See* [Bankr. Case No. 08-16378, Doc. No. 792].  Although the U.S.
Trustee's office failed to file a notice of appointment of Mr. Still to continue as the Chapter 7
Trustee, the court views this as harmless error as no objection was raised at the time of the
Chapter 7 conversion, nor has any issue been raised until GKH mentioned it in its response to
the Defendants' motions to dismiss.

[3]  GKH has appealed this decision pertaining to Mr. LeRoy's appointment nunc pro tunc.
*See* [Bankruptcy Case No. 08-16378, Doc. No. 1109].

parties.  [Adv. Proc. No. 10-ap-1397, Doc. No. 37].  The Turnover Complaint against GKH is at

the heart of the claims of GKH against the Defendants outlined in the Complaint at issue here.

GKH's Complaint provides a detailed account of the litigation proceedings that occurred

following the Trustee's filing of the Turnover Complaint.  This court has already reviewed

substantially similar allegations as made in the briefing and evidence filed in support of GKH's

motion for leave to file an action in Hamilton County, Tennessee ("Motion for Leave") that was

filed in the main bankruptcy case.  *See* [Bankr. Case No. 08-16378, Doc. Nos. 1031, 1243,

1243-1 through 1243-22, 1306, 1354].  The Complaint asserts claims of malicious prosecution

and abuse of process against the Defendants.

Attached to the Complaint are numerous exhibits that all relate to the parties' disputes

arising in the Turnover Complaint.  The exhibits include email messages between Richard

Banks, an attorney for the Debtor, Scott LeRoy, and John Konvalinka pertaining to the retrieval

of files pertaining to the Debtor or companies in which the Debtor had an interest maintained at

GKH's offices.  The email exchanges discuss whether those files were property of the Debtor or

the estate or GKH.   [Doc. Nos. 1-1, 1-2].  Exhibit 3 is a copy of the Turnover Complaint. [Doc.

No. 1-3].  Exhibit 4 is the transcript of a hearing held in this court before Judge Cook relating to

the dismissal of adversary proceeding 10-1407 on December 16, 2010. [Doc. No. 1-4].  Exhibit

5 is the transcript of Mr. Konvalinka's testimony in a hearing before this court on May 25, 2010.

[Doc. No. 1-5].  At that time Mr. Konvalinka testified that he would allow the Trustee and Mr.

LeRoy to take the records pertaining to the estate and retained by GKH to a copier service to be

duplicated.  *Id.* at pp. 10-11.  The exhibits also provide GKH's answer to the Turnover Complaint

and a letter from Mr. Konvalinka to Mr. LeRoy offering to allow him, Mr. Banks, and Mr. Still to

inspect the requested files and to have them copied by a copy service.  [Doc. Nos. 1-6, 1-7].

Exhibit 9 is a letter from Mr. Konvalinka to Mr. LeRoy informing him that GKH's position

regarding the merits of the Turnover Complaint had not changed.  [Doc. No. 1-9].  GKH also

supplied a copy of a videotaped deposition transcript of the Trustee, as well as the motion for

entry of an agreed protective order and the agreed protective order pertaining to the Turnover

Complaint.  [Doc. Nos. 1-8, 1-14, 1-16].  Exhibit 15 is a motion for entry of an agreed order of

dismissal of the Turnover Complaint.  [Doc. No. 1-15].

GKH also provided the court with the transcript from the pre-trial conference held in this

court on October 28, 2010.  [Doc. No. 1-10].  Exhibit 11 is an exchange of emails regarding the

resolution of the Turnover Complaint sent after the final pre-trial conference.  [Doc. No. 1-11].

Exhibits 12 and 13 are an exchange of email messages pertaining to the agreed protective

order filed in the turnover case.  [Doc. No. 1-12, 1-13].  Exhibit 17 is the agreed order of

dismissal that resolved the Turnover Complaint "without prejudice." [Doc. No. 1-17].

GKH's Exhibit 18, consists of a copy of a transcript of a hearing held in this court on

February 15, 2011.  [Doc. No. 1-18].  During the hearing the Trustee testified regarding the

results obtained by proceeding with the turnover action.  The following exchange occurred

between Mr. Konvalinka, who was cross-examining the Trustee, and the Trustee:

| | |
|---|---|
| Mr. Konvalinka: | You filed a turnover lawsuit and you, you don't have the records today, even though you filed that lawsuit and even though you've non-suited it, isn't that right? |
| Mr. Still: | I think that may be right. |
| Mr. Konvalinka: | All right.  Did Mr. LeRoy ever tell you that he was offered to come and look at the records at my office that I had prior to the lawsuit ever being filed? |
| Mr. Still: | I don't recall whether it was before or after the lawsuit being filed, but I recall he did tell me that you said we could come do that. |
| Mr. Konvalinka: | Do you realize that he did not come to my office at any time prior to the filing of the lawsuit to look at any records? |
| Mr. Still: | That's correct.  Because they were our records and we wanted them. |
| Mr. Konvalinka: | And you didn't get them, right? |
| Mr. Still: | No.  You never would let us have them. |

[Doc. No. 1-18, Ex. No. 18, p. 19].  The final exhibit, Exhibit 19,  is an email message from Mr.

Banks to Mr. Konvalinka dated April 28, 2010 that pertains to a confidential settlement proposal

of the Debtor's claims against GKH.  [Doc. No. 1-19].

The court has had a prior opportunity to examine these exhibits in detail as most of the exhibits filed with the Complaint were provided to the court prior to a hearing on May 18, 2011 relating to GKH's Motion for Leave.  *See* [Bankr. Case No. 08-16378, Doc. Nos. 1243-1 through 1243-22].  Many of the issues discussed in the court's memorandum issued in conjunction with its denial of the Motion for Leave are relevant to this memorandum.  *See* [Bankr. Case No. 08-16378, Doc. No. 1354].

GKH asserts that the Trustee's voluntary dismissal of the Turnover Complaint indicates that the Defendants lacked probable cause to prosecute that proceeding.  It argues that the Trustee gained nothing by filing the Turnover Complaint and that it did not provide anything to the Trustee beyond what it had already offered in exchange for the Trustee's dismissal of the case.

**B.     GKH's Filing of Adversary Proceeding 11-1016**

In addition to this adversary proceeding claiming malicious prosecution and abuse of process, GKH has filed other adversary proceedings making similar claims against a group of related defendants.  In Adversary Proceeding No. 11-1016 GKH brought malicious prosecution and abuse of process claims against Mr. Banks, Andrew Morgan, Richard Banks & Assoc., P.C., the LeRoy Defendants and Mr. Still. *See* [Adv. Proc. No. 11-1016, Doc. No. 1].  GKH claimed that the defendants in that case filed Adversary Proceeding No. 10-1407 alleging violations of the automatic stay, avoidance of preferences, avoidance of fraudulent transfers, equitable subordination, and claims against insiders that were without merit.  *Id.*  GKH based its view of the case on Judge Cook's granting of GKH's motion to dismiss Adversary Proceeding No. 10-1407.  This court issued a memorandum in Adversary Proceeding 11-1016 granting the defendants' motions to dismiss and motion for judgment on the pleadings based primarily on immunity grounds.  *See* [Adv. Proc. No. 11-1016, Doc. No. 68].  GKH has appealed that

decision by this court. [Adv. Proc. No. 11-1016, Doc. No. 72].

### C.  GKH's Filing of Adversary Proceeding 11-1118 and Substantially Identical State Court Lawsuit

GKH has also filed another adversary proceeding in this court, again alleging malicious prosecution and abuse of process relating to a lawsuit filed by Mr. Still and the Debtor against GKH in Bradley County.  *See* [Adv. Proc. No. 11-1118, Doc. No. 1].  The Bradley County action filed by the Trustee and the Debtor alleged facts similar to the facts raised by the Trustee in Adversary Proceeding 10-1407.  GKH further filed a substantially similar lawsuit in Hamilton County Circuit Court on the same day that this court denied leave to file a substantially similar action in Bradley County based on the *Barton* Doctrine.  *See* [Adv. Proc. No. 11-1121, Doc. No. 1; Bankr. Case No. 08-16378, Doc. Nos. 1387, 1388].  The Trustee removed the Hamilton County Circuit Court action to this court, and it is now an adversary proceeding in this court.  *See* [Adv. Proc. No. 11-1121, Doc. No. 1].  GKH has filed a motion to abstain/remand and/or consolidate Adversary Proceeding No. 11-1121 with Adversary Proceeding No. 11-1118. [Adv. Proc. No. 11-1121, Doc. No. 3].  That motion is still pending with this court.

### D.  Other Related Motions in the Debtor's Bankruptcy Case

GKH has also filed a motion for amendment of the judgment in the main case relating to this court's denial of GKH's motion for leave to file suit in Bradley County.  [Bankr. Case No. 08-16378, Doc. No. 1406].  This court has denied that motion.  [Bankr. Case No. 08-16378, Doc. No. 1475].  In addition, the Trustee has filed a motion for contempt against GKH based on GKH's filing of the lawsuit in Hamilton County when this court had already denied GKH's Motion for Leave and GKH's motion for leave to file a substantially similar action in Bradley County was still pending in this court.  [Bankr. Case No. 08-16378, Doc. No. 1395].  The hearing on the

Trustee's motion for contempt is scheduled for October 7, 2011.[4]

## II.   Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil

Procedure 12(b) applies to adversary proceedings.  *See* Fed. R. Bankr. P. 7012(b).  Federal

Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state

a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).  In reviewing a motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded

allegations of the complaint as true."  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir.

1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)).  In addition, a

court must construe all allegations in the light most favorable to the plaintiff.  *Bower*, 96 F.3d at

203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim

has been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955,

1969 (2007).  The complaint "must contain either direct or inferential allegations with respect to

all material elements necessary to sustain a recovery under some viable legal theory."  *Weiner*,

108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  In

*Twombly* the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and conclusions, and a
> formulaic recitation of the elements of a cause of action will not do, . . . Factual
> allegations must be enough to raise a right to relief above the speculative level,
> on the assumption that all the allegations in the complaint are true (even if
> doubtful in fact).

---

[4] GKH has filed a notice of appeal and a motion for leave to appeal the order to show
cause why GKH should not be held in contempt. [Bankr. Case No. 08-16378, Doc. Nos. 1476,
1477].

127 S.Ct. at 1964-65 (citations omitted).  *See also, Papasan v. Allain*, 478 U.S. 265, 286, 106

S.Ct. 2932 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must

take all the factual allegations in the complaint as true, we are not bound to accept as true a

legal conclusion couched as a factual allegation").   The Supreme Court has further clarified that

*Twombly* is not limited "to pleadings made in the context of an antitrust dispute."  *Ashcroft v.

Iqbal*, __ U.S. ___, 129 S.Ct. 1937 (2009).

### III.     Analysis

### A.     Immunity

As they did in their motion to dismiss adversary proceeding 11-1016, the Defendants

each argue that they are absolutely immune from liability for activities taken in their capacities

as a bankruptcy trustee or as counsel for the trustee.  GKH asserts that the Turnover Complaint

lacked any legal foundation and thus, the Defendants acted outside the scope of their authority

in pursuing the adversary proceeding.

### 1.     Trustee's Duties under the Bankruptcy Code

This court has already reviewed the doctrine of immunity as it applies to trustees in

bankruptcy in numerous decisions.  *See* [Adv. Proc. No. 11-1016, Doc. No. 68; Bankr. Case No.

08-16378, Doc. Nos.  1354, 1387].  The court begins its analysis of immunity with a review of

some of the duties at the heart of a trustee's obligations in representing a Chapter 7 bankruptcy

estate.  11 U.S.C. § 704 requires the trustee to "collect and reduce to money the property of the

estate for which such trustee serves, and close such estate as expeditiously as is compatible

with the best interests of parties in interest."  11 U.S.C. § 704(a)(1).  The trustee must further

"investigate the financial affairs of the debtor," as well as "if a purpose would be served,

examine proofs of claims and object to the allowance of any claim that is improper."  11 U.S.C.

§ 704(a)(4)-(5).

The Bankruptcy Code further provides in relevant part:

### § 542.  Turnover of property to the estate

(a) Except as provided in subsection (c) or (d) of this section, an entity . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate. . . .

(e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

11 U.S.C. §§ 542(a), 542(e).

Federal courts recognize the right of a trustee to file a "turnover action" as an adversary proceeding.  *See In the Matter of Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990) (noting that "[a] turnover action is an adversary proceeding which must be commenced by a properly filed and served complaint"); *see also In re Interpictures, Inc.*, 86 B.R. 24, 29 (Bankr. E.D.N.Y. 1988).

In *In re Matter of Perkins* the creditors, who did not have standing to bring an action pursuant to 11 U.S.C. § 704(a)(1), sought to have their motion for turnover turned into a request for a declaratory judgment that the debtor's teacher retirement savings account was property of the estate.  902 F.2d at 1258.  The Seventh Circuit denied this request, noting that the creditors:

> cite no authority for their unique proposition that the bankruptcy court in the first instance would have the power to decide as an academic matter whether certain property constitutes property of a bankrupt estate. . . . A declaration that certain property belongs in the bankruptcy estate would not be dispositive in many cases; such property may be immune from turnover. . . . Thus, the determination of whether certain property belongs to the estate should not be made outside of a specific controversy, such as a turnover action.

902 F.2d at 1258.

In this action, GKH's exhibits indicate that the parties were engaged in a legal debate regarding whether GKH's records pertaining to the Debtor's membership interests in several LLCs constituted property of the estate.  The Trustee felt that he needed a court order to compel turnover of what he contended was property of the estate; therefore, a turnover

adversary proceeding was the natural way to proceed pursuant to Fed. R. Bankr. P. 7001(1).

Further, even if the attorney files were not property of the estate, they *related* to the

Debtor's property or interests, and, as such, could be ordered to be turned over to the Trustee

in this case.  For example, in *American Metrocomm Corp. v. Duane Morris & Heckscher LLP, et

al. (In re American Metrocomm Corp.)*, 274 B.R. 641 (Bankr. D. Del. 2002) the bankruptcy court

addressed the defendants' argument that they were only obligated to turnover property of the

estate.  It explained:

> Defendants next argue that turnover under § 542 only applied to property of the
> estate and the Attorney Files do not constitute property of the estate owing to
> their sale to CAC. . . . I disagree.  "The Bankruptcy Code creates a 'two-part
> scheme for turnover of property of the estate and other information related to the
> debtor's property or financial affairs.'" Section 542(a) requires anyone holding
> property of the estate to deliver it to the trustee.  Section 542(e) allows the Court
> to order "an attorney, accountant or other person that holds recorded information
> . . .  relating to the debtor's property or financial affairs" to turn over such
> information to the trustee.  Although an action for turnover under § 542(a)
> requires that the information requested be property of the estate, there is no such
> requirement in § 542(e).  Therefore, whether the Attorney Files constitute
> property of the estate is irrelevant to the Court's determination of whether
> turnover is proper under § 542(e).

*Id.* at 652 (quoting *In re Foster*, 188 F.3d 1259, 1265 (10th Cir. 1999)) (other citations omitted).

In addition, in *In re American Metrocomm Corp.* the court analyzed the legal issues, including

relevant state rules of professional conduct, of whether the turnover of the attorney files at issue

would be with or without compensation to the defendant law firms.  274 B.R. at 656-663.  The

court ruled that the defendant law firms were required to turn over their attorney files even

without adequate protection as they did not hold valid, perfected and enforceable liens in the

documents under applicable state laws.  *Id.* at 663.

GKH argues that the Trustee only brought the Turnover Complaint based on 11 U.S.C. §

542(a) and not § 542(e), and thus 11 U.S.C. § 542(e) does not apply.  This court disagrees.

Federal Rule of Bankruptcy Procedure 7008 makes Fed. R. Civ. P. 8 applicable in bankruptcy

cases.  Fed. R. Bankr. P. 7008.  Rule 8 requires a "short and plain statement of the claim

showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  The rule is "intended

'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"

*Tyson v. Hunt (In re Tyson)*, 450 B.R. 754, 762 (Bankr. W.D. Tenn. 2011) (quoting *Twombly*,

550 U.S. at 555, 127 S.Ct. at 1964)).  Further,

> [p]ursuant to this rule, 'the form of the complaint is not significant if it alleges facts
> upon which relief can be granted, even if it fails to categorize correctly the legal
> theory giving rise to the claim.'  If the pleading is sufficient to put the defendant
> on notice of the grounds for which plaintiff is seeking relief, the pleading will be
> deemed to satisfy the requirements of Rule 8(a)(2) "notwithstanding plaintiff's
> failure to . . . cite the relevant statute."

*In re Tyson*, 450 B.R. at 762 (quoting *Gean v. Hattaway*, 330 F.3d 758, 765 (6th Cir. 2003) and

*Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, No. 04-CV-74891-DT, 2007

WL 1344183 at *1 (E.D. Mich. May 4, 2007)).

Moreover, the Trustee did rely on 11 U.S.C. § 542 more broadly in the Turnover

Complaint in its section containing the factual allegations:

> The Defendant was the primary law firm of the Debtor for several years.  The
> Debtor[ ] owned or controlled several entities which were created by the
> attorneys at the Defendant law firm.  Plaintiff alleges Defendant maintains and
> controls the files, records and documents related to the entities, which also
> constitutes property of the Debtor[ ] or the estate under 11 U.S.C. § 541. . . . The
> Plaintiff asserts the Defendant should be compelled to turnover all records of the
> Debtor, including, but not limited to, those listed on Exhibit A.
>
> Despite demand for turnover, the Defendant has failed and refused to turn over
> the Debtor's records and files.
>
> Plaintiff alleges he is entitled to immediate turnover of these files and records
> pursuant to *11 U.S.C. § 542.  Additionally*, Plaintiff alleges he is entitled to
> *records* or a copy of any records *related to funds or property of the Debtor* that
> may have been deposited or transferred through any trust or escrow account of
> the Defendant.

Turnover Complaint, ¶¶ 4-6 (emphasis added).  Thus, the court concludes that 11 U.S.C. §

542(e) is pertinent to the Trustee's claims in the Turnover Complaint.[5]

---

[5] GKH suggests that the Defendants' motions to dismiss should be converted to motions
for summary judgment pursuant to Fed. R. Civ. P. 12(d).  *See* [Doc. No. 23, p. 18 n. 6].  It

Applying 11 U.S.C. §§ 704(a)(1), 704(a)(4), 542, and Fed. R. Bankr. P. 7001(1), the court concludes that the Turnover Complaint related directly to to the Trustee's statutory duties of investigation, collecting assets and property of the estate, and seeking turnover of materials relating to the Debtor's financial affairs and interests. Thus, the court finds that the filing of the Turnover Complaint was within the scope of the Trustee's duties pursuant to the Bankruptcy Code.

### 2.    Doctrine of Immunity as Applied to Bankruptcy Trustees

In *Kirk v. Hendon (In re Heinsohn)*, the bankruptcy court addressed state law claims of malicious prosecution and defamation that the trustee defendant had removed to the bankruptcy court. 231 B.R. 48, 50 (Bankr. E.D. Tenn. 1999). The bankruptcy court reviewed the plaintiff's motion for remand or abstention and the defendant trustee's motion to dismiss. It granted the trustee's motion to dismiss and denied the plaintiff's motions. *Id.* The plaintiff alleged that the trustee initiated a criminal action against him for an improper purpose and without probable cause. *Id.* He sued the trustee for malicious prosecution following his acquittal from criminal charges of bankruptcy fraud and conspiracy to commit bankruptcy fraud.

After determining that it had jurisdiction over the plaintiff's claims and that they constituted core proceedings, the bankruptcy court concluded that the trustee had absolute judicial immunity for his actions in making the criminal referral relating to the plaintiff. In a detailed and well-reasoned opinion, the bankruptcy court reviewed the evolution of absolute

---

claims that because the Defendants make factual allegations relating to 11 U.S.C. § 542(e) that are not encompassed within GKH's Complaint, the motion should be one for summary judgment. GKH's Complaint quotes the same portions of the Turnover Complaint that the court quotes above. Therefore, GKH's Complaint does cover the factual allegations upon which the court relies to find that 11 U.S.C. § 542(e) was raised in the Trustee's Turnover Complaint. In filing their motions to dismiss, the Defendants have not filed any additional documents as exhibits in support of their motion. Therefore, the court concludes that Fed. R. Civ. P. 12(d) does not apply. *See* 5C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MAY KAY KANE, RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2011); Fed. R. Civ. P. 10(c).

immunity for trustees acting within the scope of their duties as defined by the Bankruptcy Code.

The bankruptcy court concluded that the trustee's duty to report possible violations of federal

law was analogous to a prosecutor, and he was entitled to immunity for such actions.  *In re*

*Heinsohn*, 231 B.R. at 62.  The court explained:

> . . . the reasoning which supports full immunity from malicious prosecution
> actions for prosecutors applies equally to trustees:
>
>> The risk of injury to the judicial process from a rule permitting
>> malicious prosecution suits against prosecutors is real.  There is
>> no one to sue the prosecutor for an erroneous decision not to
>> prosecute.  If suits for malicious prosecution were permitted, the
>> prosecutor's incentive would always be not to bring charges.
>
> Similarly, if trustees are subject to suit and liability for their actions in reporting
> possible criminal violations to the prosecuting authorities, no trustee would ever
> make a referral.  No trustee would run the risk of damages being assessed
> against him for making a referral based on often incomplete information which
> produces no monetary benefit to the trustee since a trustee's primary obligation
> is to collect and liquidate assets of the estate, not report crimes.  Yet a trustee is
> in a unique position to discover possible bankruptcy crimes since his duties
> require him "to investigate the financial affairs of the debtor."  To expose a
> trustee to potential liability for complying with his obligations under 18 U.S.C. §
> 3057 would emasculate an important public function which a trustee is in a
> distinct position to fulfill.

*In re Heinsohn*, 231 B.R. at 63 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 438, 96 S.Ct. 984

(1976) and 11 U.S.C. § 704(4)).

The bankruptcy court further acknowledged that other safeguards existed to protect

against prosecutorial abuses, including "an investigation and independent review by the United

States attorney" that serve to "lessen the possibility that an innocent party will be harmed by a

misguided or even malicious trustee."  *Id.* at 63.  After reviewing the landscape of analogous

cases, the court concluded that:

> [b]ased on the foregoing analysis that the function performed by a bankruptcy
> trustee in reporting possible criminal violations to the United States attorney is
> judicial in nature, that there are adequate safeguards to reduce the possibility of
> harm to an innocent party, and that subjecting a trustee to liability in this instance
> would deter the trustee from complying with his obligations under 18 U.S.C. §
> 3057, this court concludes that the defendant is protected by absolute immunity

from the plaintiff's malicious prosecution action.

*In re Heinsohn*, 231 B.R. at 64.  The court distinguished the case concerning a malicious

prosecution claim involving a third party nonbeneficiary from a suit by a beneficiary of the

bankruptcy trust involving a breach of the trustee's fiduciary duty.  *Id.* at 65-66.

The district court affirmed the bankruptcy court's decision in *Kirk v. Hendon (In re

Heinsohn)*, 247 B.R. 237 (E.D. Tenn. 2000).  The district court explained:

> [t]he Court agrees with the bankruptcy court the trustee's obligation to report
> perceived violations of federal law to the United States attorney and to cooperate
> with any ensuing investigation and prosecution is a task integral to the judicial
> process which must be immune from suits for money damages.  Government
> officials must be free to execute their duties without the threat of lawsuits.  If
> lawsuits, in particular malicious prosecution and defamation actions such as in
> this case, are allowed against trustees for making criminal referrals, trustees will
> be less inclined to perform these duties and will hesitate in the future to do so,
> thereby lessening the impact and defeating the purpose of the criminal referral
> statute.

*Id.* at 245.

In *Lowenbraun v. Canary (In re Lowenbraun)*, the Sixth Circuit reviewed whether a

trustee was protected by immunity from claims of libel, slander, abuse of process, wrongful use

of civil proceedings and the tort of outrage brought against him by the debtor's wife.  453 F.3d

314, 319 (6th Cir. 2006).  The debtor's wife initiated suit against the trustee defendant in state

court, and the trustee removed the case to bankruptcy court.  The plaintiff moved for remand or

abstention, and the bankruptcy court denied the motion.  It then granted summary judgment to

the trustee on immunity grounds.  The district court affirmed the bankruptcy court decision, and

the plaintiff appealed.  *Id.* The Sixth Circuit reviewed cases pertaining to trustee immunity,

including *In re Heinsohn*, and held that the trustee was entitled to immunity for both his judicial

and extra-judicial statements regarding missing funds.  *Id.* at 322-23.  The Court noted:

> [The trustee's attorney's] role as counsel for the trustee permitted him to
> investigate [the debtor's wife's] transfer and to recover assets properly belonging
> to the bankruptcy estate. [The trustee's attorney's] actions, moreover, benefitted
> the estate. . . . Any statements made in the course of [the trustee's attorney's]

investigation and recovery effort were thus within the privilege. [The trustee's attorney] is therefore entitled to immunity for his judicial statements.

*Id.* at 323.

The Sixth Circuit and courts within this Circuit have consistently presumed that the trustee is acting within the scope of his authority as a trustee.  For example, in *In re Heinsohn*, the district court, in affirming the bankruptcy court's opinion, noted that "[t]he Court presumes such acts were part of the trustee's duties unless Plaintiff initially alleges at the outset facts demonstrating otherwise."  247 B.R. at 246.  In considering the district court's presumption, the Sixth Circuit noted in *In re Lowenbraun*:

> This presumption strikes us as persuasive.  Congress intended for the Bankruptcy Code to be comprehensive and for the federal courts to have exclusive jurisdiction over bankruptcy matters.  A presumption in favor of the trustee, counsel, or other bankruptcy official that they were acting within the scope of their duties prevents a plaintiff . . . from making unsupported allegations in an attempt to defeat Congress's goal of providing exclusive federal jurisdiction over bankruptcy matters.

453 F.3d at 322.  *See also, Unencumbered Assets Trust v. Hampton-Stein (In re National Century Fin. Enterpr., Inc.)*, 426 B.R. 282, 292 (Bankr. S.D. Ohio 2010).

Courts in other jurisdictions have also determined that bankruptcy trustees are entitled to immunity when performing duties outlined for them in the Bankruptcy Code.  For example in *Traina v. Blanchard*, the district court concluded that:

> [c]ourt appointed bankruptcy trustees are among those who play a fundamental role in the administration of the judicial process and therefore are entitled to immunity.  "Judicial immunity not only protects judges against suit for acts done within their jurisdiction, but also spreads outward to shield related public servants, including . . . trustees in bankruptcy . . . ."  Judicial employees enjoy absolute immunity for quasi-judicial acts done in the course of their employment. Quasi-judicial acts include those which play a fundamental role to the judicial process. . . . The role of a Chapter 7 bankruptcy trustee, appointed by a bankruptcy judge, is fundamental to the administration of the estate.  A Chapter 7 trustee performing the required functions established by the Bankruptcy Code, [the trustee] is cloaked with the protection given to judicial employees carrying out duties in the scope of their employment.

No. 97-0348, 1998 WL 483485, at * 2 (E.D. La. Aug. 13, 1998).

In *Picard v. Chais et al. (In re Bernard L. Madoff Investment Securities, LLC)*, the bankruptcy court addressed the trustee's motion to dismiss counterclaims of tortious interference with contract, tortious interference with a business relationship, conversion, and a Fifth Amendment claim asserted by the defendants.  440 B.R. 282, 286 (Bankr. S.D.N.Y. 2010).  The bankruptcy court concluded that the counterclaims "must be dismissed because the Trustee sent the Letter [warning of possible violations of the automatic stay] in good faith within the scope of his duties, and is therefore immune from liability."  *Id.* at 290.  In its analysis, the bankruptcy court noted that "[i]n the Second Circuit, a bankruptcy trustee is a quasi-judicial official 'immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order.'"  *Id.* (quoting *Lebovits v. Scheffel (In re Lehal Realty Assoc.)*, 101 F.3d 272, 276 (2d Cir. 1996)).

In addressing whether the trustee was only protected by qualified immunity pursuant to an exception to the immunity doctrine in the Second Circuit, the bankruptcy court explained the policy behind trustee immunity.  *In re Bernard L. Madoff Investment Securities, LLC*, 440 B.R. at 292.  It noted:

> . . . sound policy counsels in favor of providing immunity for trustees in cases such as this one.  *A trustee should be shielded from liability for his lawful exercises of judgment and discretion, even if, in hindsight, such interpretations of law were incorrect.*  If immunity applied only to decisions that turned out to be proper, there would be no need for the doctrine of immunity.  Here, a determination that the Trustee can be held liable would deter future trustees for fear they could be held liable for every discretionary decision. . . . The Court cannot impose liability on the Trustee for carrying out his duties in good faith and based on his business judgment.

*Id.* at 292-93 (emphasis added).  *See also, Weissman v. Hassett*, 47 B.R. 462, 467 (D.C.N.Y. 1985) (noting that trustee report "furthered an important public purpose and should not render him subject to suit, particularly since he acted pursuant to court order and statutory authorization"); *Walton v. Watts (In the Matter of Swift)*, 185 B.R. 963, 970 (Bankr. N.D. Ga. 1995) (concluding that "case law has firmly established that, as an arm of the bankruptcy court,

the Trustee merits . . . quasi-judicial immunity.  Accordingly, the law will absolutely immunize the

Trustee for his conduct, unless he has acted in the clear absence of any authority regarding this

matter").

      In *Weissman* the plaintiffs sought a finding of personal liability of the trustee for more

than $25 million in damages.  *Weissman*, 47 B.R. at 467.  The district court determined that the

trustee was immune from personal liability and noted that "[e]ven a remote prospect of personal

liability of such a magnitude could not help but lessen the vigor with which future reorganization

trustees will pursue their obligations to uncover wrongdoing and report on potential claims held

by a bankrupt estate."  *Id.*  The court also noted that the Bankruptcy Code contained several

safeguards to prevent a trustee's abuse of his authority.  *Id.* (citing 11 U.S.C. § 107(b)(2); 11

U.S.C. § 326; 11 U.S.C. § 324).  As one bankruptcy court has noted, "[s]uits against trustees

and their counsel should not be a substitute for Rule 9011, and indeed such lawsuits would

usually impose an unnecessary and unwarranted burden in cases in which a meritorious Rule

9011 motion could be brought."  *In re Kids Creek Partners, L.P.*, 248 B.R. 554, 564 (Bankr. N.D.

Ill. 2000).

      **3.**      **Extension of Doctrine of Trustee Immunity to Counsel for Trustee**

      In *In re Heinsohn* the bankruptcy court explained that the reasoning behind extending

immunity to U.S. trustees, "'is easily extended to the front-line bankruptcy trustee.'"  *In re*

*Heinsohn*, 231 B.R. at 63 (quoting Ralph C. McCullough, *Trustee Liability: Is There Enough*

*Protection For These "Arms of the Court?"* 103 COM. L.J. 123, 138 (Summer 1998)).  Indeed,

the Sixth Circuit has held that status as counsel for a trustee does not alter immunity analysis:

"so long as 'they act at the direction of the trustee and for the purpose of administering the

estate or protecting its assets,' counsel and other court-appointed officers who represent the

estate 'are the functional equivalent of the trustee.'"  *In re Lowenbraun*, 453 F.3d at 322 (quoting

*Allard v. Weitzman (In re DeLorean)*, 991 F.2d 1236, 1241 (6th Cir. 1993)).

**4.      The Defendants' Prosecution of the Turnover Complaint Was Not Beyond
the Scope of Their Authority**

GKH does not argue that the immunity doctrine does not exist.  Instead, it argues that

the Defendants' actions in prosecuting the Trustee's Complaint were *ultra vires* actions or

actions outside the scope of the Trustee's duties under the Bankruptcy Code.  As such, GKH

contends that the Defendants' actions are not protected by the doctrine of immunity as

explained by *In re Heinsohn*.  In that case, the court noted that absolute immunity generally

protects "acts within the ambit of bankruptcy trustee's official duties."  *In re Heinsohn*, 231 B.R.

at 63.  GKH cites several cases in support of its position that the Defendants' actions were

outside the scope of their duties outlined in the Bankruptcy Code.

The court has already provided analysis distinguishing the cases upon which GKH relies

in its prior opinion dismissing Adversary Proceeding 11-1016.  *See* [Adv. Proc. No. 11-1016,

Doc. No. 68 at pp. 14-17].  Therefore, the court will not reproduce all of that analysis here, but

will summarize its conclusions.

GKH relies on *Teton Millwork Sales v. Schlossberg* for support of its position.  311 F.

App'x 145, 2009 WL 323141 (10th Cir. Feb. 10, 2009).   That case involved a receiver authorized

by a court order to collect assets of the husband in an acrimonious divorce dispute.  The

receiver then "seize[d] the assets" of Teton Millwork Sales, a Wyoming company in which the

ex-husband was a twenty-five percent shareholder.  *Id.* at *147.  Teton Millwork Sales brought

suit against the receiver in Wyoming, alleging that the receiver exceeded his authority by seizing

its assets, as well as by making false representations pertaining to his legal authority.  *Id.*  In

reversing the lower court's granting of the receiver's motion to dismiss the lawsuit, the Tenth

Circuit noted that "[i]n order to be immune, the receiver must act within the scope of his authority

in carrying out a court order."  *Id.* at *150.  The appellate court found that the relevant court

order only authorized the receiver to obtain the assets of the ex-husband, not assets that

belonged to another entity.  The court found that the allegations that the receiver seized assets beyond the scope of the court order, without having obtained jurisdiction in Wyoming and through the use of fraudulent and misleading statements, were enough to survive a motion to dismiss.  *Id.* at *151.  In reversing the lower court, the Tenth Circuit noted:

> The foregoing analysis certainly does not resolve the issue of whether Mr. Schlossberg will ultimately enjoy absolute immunity.  Because we are reviewing the grant of a motion to dismiss, we need only decide whether the complaint states sufficient facts such that it is plausible that [the receiver] does not enjoy absolute immunity.  *While in many cases it may be clear on a motion to dismiss whether absolute immunity applies*, in this case that issue must be resolved in further proceedings, once the parties have had the opportunity to develop the facts through discovery.

*Id.* at *152 (emphasis added).  Thus, *Teton Millwork Sales* involved a receiver's physical seizure of property outside the scope of a court order aggravated by allegations of misrepresentation and fraud.  The court does not find similar conduct in this case.

GKH also cites *Leonard v. Vrooman* in support of its position that the Defendants' actions in prosecuting the Turnover Complaint went beyond the scope of their authority.  383 F.2d 556 (9th Cir. 1967).  That case, again, involved an actual physical seizure of property by a trustee.  The bankruptcy estate in *Leonard* included grocery store stock and equipment in a building that had been leased to the bankrupt estate.  *Id.* at 558.  The trustee, along with a constable, took physical possession of the entire building and put new locks on all of the doors. *Id.*  The Ninth Circuit concluded that "the trustee initially could have and should have obtained a turnover order directing delivery to the trustee of the personalty which was an asset of the bankrupt estate."  *Id.* at 560-61.

In *Ziegler v. Pitney*, another case relied upon by GKH, the Second Circuit addressed a tort claim of negligence against a bankruptcy trustee where the negligent acts of the employees of the trustee, who was operating a bankrupt railroad, resulted in the death of a child.  139 F.2d 595, 596 (2d Cir. 1943).  The Second Circuit affirmed the dismissal of the complaint because

the plaintiff was attempting to sue the trustees in their individual capacities when there was no

suggestion that the trustees had acted ultra vires outside of their authority.  *Id.*

In another case addressing this issue, the bankruptcy court noted, "[t]he situation in

which trustees have been most commonly found to have acted outside of their authority is in

seizing property which is found not to be property of the estate."  *Schechter v. State of Illionis,*

*Dep't of Revenue (In re Markos Gurnee Partnership)*, 182 B.R. 211, 217 (Bankr. N.D. Ill. 1995)).

The cases cited by GKH involve actions taken by a trustee or receiver that are *not*

analogous to the actions of the Defendants in filing the Turnover Complaint.  Unlike the receiver

in *Teton Millwork Sales* and the trustee in *Leonard*, the Defendants here were seeking court

approval *before* seizing any documents that they alleged were property of the estate or related

to the Debtor's financial affairs.  This is precisely the way the Bankruptcy Code expects

bankruptcy trustees to act.  Rather than seizing records which may or may not be property of

the estate or which contain information regarding the Debtor's financial affairs without authority,

the Defendants sought this court's authority to recover assets for the benefit of the estate.

GKH asserts that there is little difference between physically seizing property that may or

may not be property of the estate and filing an adversary proceeding seeking turnover of

property pursuant to 11 U.S.C. § 542.  This court respectfully disagrees.  As explained *supra*,

the court finds that the filing of a turnover adversary proceeding against a third party is an

ordinary exercise of a trustee's powers.  It is true that the third party must respond to the

complaint and defend itself against the proceeding.  This is true of all litigation.  However, the

filing of a complaint that commences a proceeding replete with procedures and the provision of

judicial due process is much preferred to outright seizure of property to which there may or may

not be a legal right.

GKH calls the Trustee's filing of the Turnover Complaint malicious and arrogant;

however, GKH has provided the court with no evidence suggesting malice by the Trustee or his

attorneys against GKH.  GKH further asserts that the court should be concerned about the plight

of third parties who are harassed by trustees in bankruptcy.  First, from a policy standpoint, the

party who was the subject of the turnover was the Debtor's counsel and counsel for the entities

in which the Debtor invested.  It was not a third party who had only had one transaction with the

Debtor.  Second, the court would be concerned about such a plight of a third party if it had

determined that the Trustee's filing of the Turnover Complaint went beyond the scope of his

duties.  However, as explained *supra*, it has not made such a finding.

> **5.      Whether the Trustee Needed Leave of this Court to File the Turnover
> Complaint**

Although this court addressed this argument in its opinion denying GKH leave to file suit

in Bradley County (*see* Bankr. Case No. 08-16378, Doc. No. 1387, pp. 14-15), GKH continues

to argue, citing *Kashani v. Fulton (In re Kashani)*, 190 B.R. 875 (B.A.P. 9th Cir. 1995), that the

Defendants should have sought leave of this court prior to filing the Turnover Complaint.  *See*

[Doc. No. 23, pp. 3 n.2, 15, 30, 32].   Therefore, the court will address GKH's argument again.

A trustee in bankruptcy is given a number of powers relating to his duties under 11

U.S.C. § 704.  One of these powers is the "capacity to sue."  11 U.S.C. § 323(b).  In addition,

the estate, created upon the filing of a petition in bankruptcy, includes "all legal or equitable

interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

The estate also includes, "[a]ny interest in property that the estate acquires after the

commencement of the case."  11 U.S.C. § 541(a)(7).  Further, "[c]hoses-in-action . . . are

included within this broad definition."  *In re Bailey*, 421 B.R. 841, 849 (Bankr. N.D. Ohio 2009).

*See also*, *Bauer v. Commerce Union Bank, Clarksville, Tennessee*, 859 F.2d 438, 441 (6th Cir.

1988); *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 512 (4th Cir. 2005)

(finding that property of the estate includes causes of action arising after commencement of

case); *Polis v. Getaways (In re Polis)*, 217 F.3d 899, 901 (7th Cir. 2000) (noting that property of

the estate under § 541(a) has "uniformly been interpreted to include causes of action").

In *In re Lawrence* the district court explained:

> [i]t is the trustee who has the exclusive standing and capacity to sue and be sued on behalf of the bankruptcy estate under 11 U.S.C. § 323(b).  The Trustee is appointed by the Bankruptcy Court to take charge of the debtor's estate, collect assets, bring suit on the debtor's claims against other persons, defend actions against the estate, and otherwise administer the estate.

*Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 801 (E.D. Tenn. 1998).

Moreover, "[t]he trustee is the representative of the estate, 11 U.S.C. § 323(a), and it . . . is authorized, *with or without court approval*, to 'commence and prosecute any action or proceeding in behalf of the estate in any tribunal.'" *Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 n.6 (3d Cir. 1989) (emphasis added) (quoting Fed. R. Bankr. P. 6009).  GKH points to no provision in the Bankruptcy Code that requires the *trustee* to obtain leave of the bankruptcy court prior to pursuing claims of the estate.

In *In re Kashani* the Ninth Circuit Bankruptcy Appellate Panel did note that "courts have established certain standards and instructions whereby the trustees can protect themselves by complying with these standards and, thus, gain judicial immunity.  Those instructions include: the trustee should give notice to the debtor and obtain prior court approval of the proposed act; . . . ." 190 B.R. at 884.  However, in stating this proposition, the *In re Kashani* court cites cases involving a trustee seeking to carry on business on behalf of the estate.  For example, in *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989), the trustee sought leave of the court to hire a property manager to manage the debtor's numerous rental properties.

In addition, in *Mosser v. Darrow* the United States Supreme Court also addressed the situation of a trustee running the business of a bankrupt estate.  341 U.S. 267, 71 S.Ct. 680 (1951).  The Supreme Court explained that a trustee might seek instruction from the court when attempting to exercise business judgment:

> Trustees are often obliged to make *difficult business judgments*, and the best that

disinterested judgment can accomplish with foresight may be open to serious
criticism by obstreperous creditors aided by hindsight. Court[s] are quite likely to
protect trustees against heavy liabilities for disinterested mistakes in business
judgment. . . .The practice is well established by which trustees seek instructions
from the court, given upon notice to creditors and interested parties, as to
matters which involve difficult questions of judgment.

*Id.* at 273-74, 71 S.Ct. at 683 (emphasis added).

Since the statement in *In re Kashani* upon which GKH relies, several courts have

weighed in on the advisability of a trustee seeking court approval prior to taking specific actions

in the course of administering the estate. For example, in *In re NSCO, Inc.* the bankruptcy court

addressed whether the tenets of *Mosser* still applied:

Although *Mosser* continues to be cited, including by the First Circuit and other
courts, the requirement of a case or controversy, coupled with the ripeness
doctrine, inform that the Court must not render an advisory opinion or a
premature one in an effort to insulate a trustee faced with a difficult question. . . .

Moreover, at least one court, *In re Freedlander Inc., The Mortg. People*, 95 B.R.
390 (Bankr. E.D. Va. 1989), has questioned whether *Mosser* is still good law in
light of the evolution of bankruptcy judges from bankruptcy referees to true
judicial officers and the development of the United States Trustee system.
Because of these changes in bankruptcy practice, the court refused to advise the
trustee whether or not to pursue an appeal. The *Freedlander* court's reasoning
provides further support for removing a court from deciding issues that are more
appropriately left to those responsible for administering bankruptcy estates.

427 B.R. 165, 177-78 (Bankr. D. Mass. 2010).

In *In re Freedlander Inc., The Mortgage People*, the bankruptcy court addressed a

motion by a bankruptcy trustee seeking guidance from the court on whether to continue

pursuing an appeal of a district court decision. 95 B.R. 390, 391 (Bankr. E.D. Va. 1989). The

bankruptcy court declined to provide guidance to the trustee, and upon reviewing the history of

the role of bankruptcy judges, explained:

. . . the Court has concluded that it would be improper to advise the Trustee in
this matter. The Court's decision is founded upon a review of the development of
the bankruptcy laws of the United States over the last 100 years. In the 20th
century the trend has been toward removing bankruptcy judges from the
administration of bankruptcy cases, and allowing them to serve instead as
neutral arbiters of disputes. Although at one time it may have been appropriate

for the bankruptcy judge to respond to trustees' requests for guidance in matters of estate administration, that time has passed. . . .

The potential for unacceptable conflict inherent in court guidance of trustees can be illustrated by a hypothetical example. Suppose, for instance, that the trustee in a bankruptcy case petitioned this Court for advice as to whether the trustee should commence a preference suit on behalf of the estate. Could the Court direct the trustee to maintain the action, and to expend estate assets in the process, without in some way prejudging or appearing to have prejudged the matter? . . . Conversely, in order for the Court to direct the trustee not to bring the preference suit, the Court in an effort to make an informed decision, would be required to obtain some knowledge of the probabilities for success of the action, as well as the availability of funds to finance the suit. Such knowledge could be obtained only from one or more interested parties to the action, and in gathering the information for that decision the Court would likewise possibly prejudice its responsibility to preside impartially over the entire bankruptcy case. . . .

While at the time of the *Mosser* decision the practice of providing trustees with advice may have been well established, the Court, for the reasons outlined above, believes that such a practice is unwise, and perhaps impermissible, today.

*Id.* at 391-94.

Here, by filing the Turnover Complaint, the Defendants sought to pursue a claim relating to the turnover of property of the bankruptcy estate and records related to the Debtors' financial affairs pursuant to 11 U.S.C. § 542. The Trustee and his counsel were not engaged in conducting business of the estate that required the use of business judgment that would benefit from a court order authorizing them to proceed with a particular business strategy. Thus, for this reason and for the reasons discussed in *In re Freedlander, Inc.* and *In re NSCO supra*, the court concludes the Trustee had no obligation to seek court approval in advance of the filing of the Turnover Complaint. 95 B.R. at 391-94; 427 B.R. at 177-78.

### B.  Failure to State a Claim for Relief

Based upon its view that the Trustee acted within the scope of his duties, the court concludes that GKH has failed to demonstrate that it can state a prima facie case of malicious prosecution or abuse of process.

1.      **Malicious Prosecution**

Under Tennessee law, a claim of malicious prosecution requires a plaintiff to

demonstrate three elements: "(a) that a prior lawsuit or judicial proceeding was brought against

the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought

against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceeding terminated in

the plaintiff's favor." *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. Sup. Ct. 2005).  A plaintiff

bears a heavy burden of proof to establish the elements of lack of probable cause and malice.

*Buda v. Cassel Bros., Inc.*, 568 S.W.2d 628, 631 (Tenn. Ct. App. 1978).

In *Buda* the court adopted the description from the Restatement of Torts regarding the

element of probable cause:

> In order to establish the lack of probable cause in instituting a civil proceeding, it
> must appear that the suit was filed primarily for a purpose other than that of
> securing the proper adjudication of the claim in which the proceedings are based.
> If it is established that the party instituting the proceeding reasonably believes in
> the existence of the facts upon which the claim is based and has reasonable
> belief that under those facts the claim may be valid or has reasonable belief in
> reliance upon the advice of counsel, sought in good faith and given after full
> disclosure of all relevant facts within his knowledge and information, then
> probable cause is established.

*Id.* at 631-32 (quoting Restatement of Torts, Second §§ 674, 675).

In *In the Matter of Linton* the court considered the issue of probable cause for a trustee's

actions.  It addressed the plaintiff's contention that the trustee's dismissal of an adversary action

indicated a lack of probable cause:

> [The plaintiffs] appear to believe that the fact that the trustee dropped the
> adversary action shows that it was groundless and therefore malicious.  This of
> course is wrong.  Many suits filed in good faith after careful precomplaint
> investigation fizzle long before judgment whether because further investigation
> fails to substantiate the allegations of the complaint or because the defendant
> presents compelling evidence in his favor that the plaintiff didn't know about or
> because it turns out that the defendant doesn't have sufficient assets to make the
> continued prosecution of the suit worthwhile.  As long as there is probable cause
> to sue, there is no malicious prosecution.

> The bankruptcy judge was satisfied that there was probable cause here. . . . The

> fact that [the trustee] couldn't substantiate his suspicions did not retroactively
> remove his probable cause to sue.

136 F.3d 544, 547 (7th Cir. 1998). The court then affirmed the bankruptcy court's decision to

deny leave to sue the trustee in state court.

In this action, although the Defendants chose not to pursue the records issue further,

they had legal authority for seeking copies of the requested records. As explained *supra*, the

Trustee has the duty and obligation to investigate the Debtor's financial affairs. *See* 11 U.S.C. §

704(a)(4). Further, the Bankruptcy Code requires files pertaining to the debtor's financial affairs

to be turned over to the trustee. 11 U.S.C. § 542(e). In addition, there is legal authority for the

idea that a state's Rules of Professional Conduct may make such a turnover required without

adequate protection. *See In re American Metrocomm Corp.*, 274 B.R. at 663.

Moreover, the court finds that the Trustee was not entirely unsuccessful in its efforts to

obtain some property of the estate by filing the Turnover Complaint. For instance, one of the

letters that GKH supplied to the court as an exhibit to its Motion for Leave explains how GKH

agreed to turnover personal records belonging to the Debtor, as well as records pertaining to

entities that were owned 100% by the Debtor. *See* [Doc. No. 1243-10].[6] In the letter dated

October 14, 2010, Mr. LeRoy described three different groups of records and noted, "[f]rom our

conversations over the last several days, I understand you are agreeable to transferring files in

GKH possession for entities 100% McKenzie owned. . . . If this understanding is correct, please

let me know when we may pick up these files." *Id.* The letter listed sixteen different entities that

were "100% McKenzie owned." The letter also states, "I acknowledge receipt of [the Debtor's]

---

[6] This letter was not made an exhibit to the Plaintiff's Complaint in this adversary
proceeding; however, the court takes judicial notice of this letter as it was filed by GKH in
support of its Motion for Leave in the Debtor's main bankruptcy case. *See* [Bankr. Case No. 08-
16378, Doc. No. 1243-10]; *see also In re Perry*, 388 B.R. 330, 334 n.1 (Bankr. E.D. Tenn. 2008)
(noting that "[i]n its resolution of the present Motion to Dismiss, the court takes judicial notice of
material undisputed facts of record in the Debtor's bankruptcy case file").

personal files or documents by hand-delivery from you[r] office on October 12th.  Thank you."  *Id.*

Thus, through the filing of the Turnover Complaint, the Defendants were successful in obtaining

at least a subset of the records they had previously requested without success.  *See also*, [Doc.

No. 1-10, Ex. 10 to the Complaint, Statements of F. Scott LeRoy at Final Pre-trial Conference].

Further, the parties entered into a highly detailed protective agreement with a protective

order entered by the court that outlined the use and disclosure of other records.  *See* [Doc. No.

1-16].  Thus, the court cannot say, based on the evidence presented in the record, coupled with

this court's entry of a protective order that the Defendants simply dismissed the Turnover

Complaint without obtaining any of the goals sought in the action.

GKH argues that the Trustee gained nothing from it by filing the Turnover Complaint that

GKH had not already offered prior to the institution of the turnover action.  However, even if

GKH is correct in this assertion, it does not follow that the Trustee's dismissal alone

demonstrates a lack of probable cause.  There may be other reasons for such a dismissal, such

as constraints on the estate's financial resources.  *See e.g.*, *In the Matter of Linton*, 136 F.3d at

547.

GKH may not agree with these legal authorities, but the decision regarding whether the

Defendants had probable cause to institute the turnover action, as a matter of law, is not for

GKH to make.  The court is authorized to make determinations regarding interpretation of the

Bankruptcy Code's provisions.  The court concludes that the Defendants did not act without a

legal basis in filing the Turnover Complaint and seeking a decision from this court regarding

GKH's obligation to turnover files pertaining to the Debtor's financial affairs.  Therefore, GKH

cannot demonstrate a lack of probable cause for the Turnover Complaint.  Because the court

finds that probable cause existed for the Trustee's filing of the Turnover Complaint, there is no

presumption of malice.  GKH's claim for malicious prosecution fails as a matter of law.

2.      **Abuse of Process**

Under Tennessee law to establish a claim of abuse of process a plaintiff must show: "'(1) the existence of an ulterior motive; and (2) an act in the use of process other than such as would be proper in the regular prosecution of the charge.'"  *Givens v. Mulliken ex rel. Estate of McElwaney*, 75 S.W.3d 383 (Tenn. Sup. Ct. 2002) (quoting *Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 555 (Tenn. Sup. Ct. 1999)).  Further, "[a]buse of process differs from malicious prosecution in that abuse of process lies 'for the improper use of process *after* it has been issued, not for maliciously causing process to issue.'" *Bell ex rel. Snyder*, 986 S.W.2d at 555.  In addition:

> [t]he test as to whether there is an abuse of process is whether the process has
> been used to accomplish some end which is without the regular purview of the
> process, or which compels the party against whom it is used to do some
> collateral thing which he could not legally and regularly be compelled to do.

*Priest v. Union Agency*, 125 S.W.2d 142, 144 (1939).

GKH urges that it has demonstrated a prima facie case of abuse of process because the Defendants "attended depositions and insisted on proceeding forward with court hearings and conferences, including a pre-trial conference, despite having no legal support for their claims, in their efforts to continue to prosecute the [Turnover Complaint] against GKH for an ulterior purpose." [Doc. No. 23, pp. 26-27].  However, the court has already discussed *supra* the legal support for the Trustee's claims alleged in the Turnover Complaint.  The Trustee and GKH were engaged in a legitimate legal dispute regarding GKH's obligations to turnover documents relating to the Debtor and the Debtor's financial affairs pursuant to 11 U.S.C. §§ 704(a)(1), 704(a)(4), and 542.  Although the Trustee ultimately agreed to dismiss the Turnover Complaint, his pursuit of records potentially pertaining to the Debtor's interests was not without a basis in the law.  In addition, his dismissal of the proceeding does not eliminate the legal underpinnings of the proceeding.  *See e.g., In the Matter of Linton*, 136 F.3d at 547.  The Trustee dismissed

the Turnover Complaint by November of 2010 after filing the proceeding in late July of 2010 and

obtaining the protective order on November 3, 2010.  Although GKH may have attended some

depositions and pre-trial hearings, as well as exchanged email messages with the Defendants,

there is no evidence that the Defendants engaged in any conduct not typical of other types of

litigation or adversary proceedings.  The Defendants had a legal argument regarding why they

were entitled to copies of the records pertaining to the Debtor's interests.  *See* 11 U.S.C. §§

542(a), 542(e); *In re American Metrocomm Corp.*, 274 B.R. 641.

GKH argues that Judge Cook's dismissal of Adversary Proceeding 10-1406 should have

given the Trustee notice that the claims in the Turnover Complaint were without merit.

However, Judge Cook's opinion addressed an issue about whether a transfer of property owned

by an entity was property of the estate.  The court can find nothing in his opinion indicating a

trustee should not investigate the records related to a debtor's financial affairs.  He did not

address the issue of whether the Trustee was entitled to obtain records belonging to the estate,

the Debtor, or that related to the Debtor's affairs pursuant to 11 U.S.C. § 704 and 11 U.S.C. §

542.

The court concludes that GKH has failed to establish a prima facie case for its abuse of

process claim.  GKH has failed to allege that the Defendants engaged in process that would not

be proper in the regular prosecution of a turnover action pursuant to 11 U.S.C. §§ 704(a)(1),

704(a)(4), and 542.  To the extent that GKH argues that the Defendants' claims in the Turnover

Complaint were without merit, the court has concluded that the Trustee had a legal basis for

filing the Turnover Complaint.

Further, the court concludes that the cases relied upon by GKH are distinguishable from

the situation in this proceeding.  Those cases involved a rogue trustee or receiver physically

seizing property that did not belong to the estate before taking the proper procedural steps to

obtain jurisdiction over those assets.  In this case, the Defendants were taking the procedural

steps necessary to be entitled to physical possession of the records if they were successful.

The court would be discouraging the filing of adversary proceedings by denying the Defendants'

motions here when an adversary proceeding is precisely the manner in which trustees are to

seek turnover of records pertaining to a debtor's financial affairs.  *See e.g.*, 28 U.S.C. §

157(b)(2)(E), Fed. R. Bankr. P. 7001(1); *In the Matter of Perkins*, 902 F.2d at 1258.

> C.    **Additional Policy Reasons for Dismissal**

Based on the strong policy reasons for protecting a trustee from liability for exercising his

judgment in how to administer property of the estate and to investigate the financial affairs of

the Debtor and to prevent the Defendants here from being distracted during an ongoing

bankruptcy case, the court concludes that the Defendants' motions should be granted.  As this

court has repeatedly noted, the court has other ways of sanctioning wayward trustees.  For

example, Fed. R. Bankr. P. 9011(c) gives the court authority to impose sanctions and to adjust

attorney's fees applications.

One additional reason for dismissing this action at this stage of the proceedings is that in

this Circuit, courts adhere to a policy of dismissal upon immunity grounds as early as possible to

avoid the unnecessary expense of discovery if immunity is applicable.  For example, in *Moore v.

City of Harriman*, the Sixth Circuit noted that in its prior decision of *Wells v. Brown*:

> [w]e explained the policy rationale of the qualified immunity doctrine, i.e., the
> "desire to shield public officials from diverting their energies through the forced
> defense of challenges to their actions taken in their governmental capacities,"
> and the related requirement that those who are entitled to such immunity "should
> be granted that immunity at the earliest possible stage of the case."  That means
> resolving the immunity question prior to discovery.

272 F.3d 769, 778 (6th Cir. 2001) (quoting *Wells*, 891 F.2d 591, 593-94 (6th Cir. 1990)) (citing

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982) (concluding that "bare allegations of

malice should not suffice to subject government officials either to the costs of trial or to the

burdens of broad-reaching discovery")).  Similarly, in this case the court concludes that

subjecting the Defendants to discovery in this proceeding will serve as a distraction during the ongoing main bankruptcy matter and may preclude them from fully focusing on their duties relating to the administration of the Debtor's estate.  *See e.g., In the Matter of Linton*, 136 F.3d at 545.  In the absence of any evidence suggesting the Defendants acted with malice beyond GKH's speculative assertions, the court concludes that dismissal of this action is appropriate at this early stage of the litigation due to the inherent policy considerations surrounding trustee immunity from both liability, as well as the costs and burden of launching a defense to litigation.

###### D.       Defendants' Arguments Regarding Pre-Emption

Having concluded that the Defendants are immune from suit in this action, the court declines to consider the Defendants' further arguments relating to pre-emption.  This court's analysis on that issue is not necessary to the decision here, and, as such, would constitute mere dicta.

For these reasons, the court will **GRANT** the Defendants' motions to dismiss on immunity grounds and failure to state a claim alone.

###### IV.      Conclusion

As explained *supra*, the court concludes that the Defendants are entitled to immunity from further prosecution of this adversary proceeding against them.  The Trustee, as well as counsel for the Trustee are protected by the doctrine of immunity.  GKH has further failed to state a prima facie case of either malicious prosecution or abuse of process.  The Defendants' motions to dismiss will be GRANTED.  GKH's Complaint will be DISMISSED.

A separate order will enter.

# # #